**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Eduardo Rivero,

       Petitioner,

v.

Scott P. Fisher,

       Respondent.

Civ. No. 10-3045 (SRN/JJK)

**REPORT AND**
**RECOMMENDATION**

---

Eduardo Rivero, #45718-179 K2, FCI Sandstone, P.O. Box 1000, Sandstone, MN 55072, *pro se.*

Ana H. Voss, Assistant United States Attorney, counsel for Respondent.

---

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1 ("Pet. for Writ of Habeas Corpus")). Specifically, Petitioner objects to a Discipline Hearing Officer's decision to disallow twenty-seven days of good conduct time. Petitioner also requests habeas corpus relief on the grounds that the Bureau of Prisons violated Administrative Procedure Act § 553 and infringed upon Petitioner's First Amendment rights. The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. Because

Petitioner has not exhausted his administrative remedies or even filed an administrative appeal, this Court recommends that Petitioner's Petition for habeas corpus relief be denied.

## BACKGROUND

Petitioner is currently serving a 292-month sentence in the Federal Correctional Facility in Sandstone, Minnesota.  (Doc. No. 6, Decl. of Angela Buege ("Buege Decl.") ¶ 3.)  Judge Alvarez of the United States District Court, Southern District of Texas, imposed this sentence for Possession With Intent to Distribute in Excess of 50 Grams of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(a), and 18 U.S.C. § 2.  (*Id.*)  With good conduct time, Petitioner's current projected release date is June 26, 2026.  (*Id.*)

On April 25, 2010, FCI-Sandstone staff discovered that Petitioner had dialed a local Sandstone, Minnesota telephone number but had spoken with a woman and his child—both of whom reside in Grand Prairie, Texas.  (*Id.* ¶ 4.) Bureau of Prisons ("BOP") regulations allow inmates to place personal calls but such calls must comply with "those limitations which the Warden determines necessary" to protect security and safety of both inmates and the public. 28 C.F.R. § 541.100.  Absent special circumstances, the BOP only allows inmates to place calls to approved phone numbers that appear on that inmate's "official telephone list."  28 C.F.R. § 540.101.  The inmate is responsible for the costs of telephone calls and the regulations do not allow inmates to use third-

party billing or electronic-call transfers.  28 C.F.R. § 540.105(a).  Inmates must

place all calls through the Inmate Telephone System ("ITS") so that the BOP can

track and analyze inmates' telephone use pursuant to 28 C.F.R. § 540.102.

(Buege Decl. ¶ 12.)

The increased availability of Voice over Internet Protocol ("VoIP")

technology allows users to place calls over the Internet to avoid paying long-

distance fees.  Some private companies have marketed VoIP services to

inmates—but the use of VoIP or other similar technology may "mask the identity"

of the recipient, interfering with the ITS and potentially threatening safety and

security by allowing inmates to speak with unknown and unapproved persons.

(*Id.*)  On January 22, 2010, The Warden of FCI-Sandstone, Scott Fisher, issued

a memorandum to the inmate population.  (Pet. for Writ of Habeas Corpus,

Ex. A.)  The memorandum prohibited the use of VoIP services by inmates and

said that any use of a telephone number assigned to a service provider instead

of the authorized call recipient violated telephone regulations.  (*Id.*)  The

memorandum gave inmates two weeks to remove VoIP numbers from phone

lists and to begin complying with the policy.  (*Id.*)

On April 25, 2010, FCI-Sandstone staff determined that Petitioner spoke to

his child and a woman in Grand Prairie, Texas after calling an authorized local

number in Sandstone, Minnesota.  (Buege Decl. ¶ 4.)  The next day, Petitioner

received an incident report charging Petitioner with a violation of the telephone-

use policy.  (*Id.* ¶ 5.)   Staff read the incident report to Petitioner, advised him of

his rights, and gave him a copy of the report.  (*Id.*)  Petitioner did not make any

statements or admissions and prison staff referred the incident to the Unit

Discipline Committee ("UDC") for a further hearing.  (*Id.*)  At the UDC hearing on

April 28, 2010, Petitioner submitted a written statement and said "that he did not

believe he had violated BOP policy."  (*Id.* ¶ 8.)  The UDC submitted the charge to

a Disciplinary Hearing Officer ("DHO") for a hearing and recommended

sanctions, including disallowance of 50% of Petitioner's good conduct time.  (*Id.*)

Petitioner also received three forms: (1) an Inmate Rights at Discipline Hearing;

(2) a Notice of Discipline Hearing Before the DHO; and (3) a Notice of

Advisement of DHO Hearing.  (*Id.*)  Petitioner thereafter requested the presence

of a staff representative at the hearing but did not request any witnesses.  (*Id.*)

     The DHO hearing took place on May 13, 2010.  (*Id.* ¶ 10.)  Petitioner

admitted that he had used a service to forward the call to Texas, but said that he

did not believe he had violated the policy because the prison had approved both

the local number and the identity of the recipient.  (*Id.*)  Petitioner also

acknowledged that he had received and read the Warden's January 22, 2010

memo.  (*Id.*)  The DHO determined, based on Petitioner's admissions that he had

read the memorandum and that he dialed a local telephone number to contact

recipients in Texas, that Petitioner violated the prison policy.  (*Id.* ¶ 14.)  The

DHO disallowed twenty-seven days of good conduct time and suspended other

privileges temporarily (including ninety days of telephone privileges).  (*Id.* at

Attach. E.)

   After an unfavorable decision by a DHO, inmates may pursue an internal

appeal process.  28 C.F.R. §§ 542.13–542.15.  The DHO must provide a written

copy of its report to the inmate "ordinarily within 10 days of [its] decision."

28 C.F.R. § 541.47(g).  After the inmate receives the report, he or she has twenty

days within which to file an appeal with the Regional Office.  28 C.F.R.

§§ 541.19, 542.14(d)(2).  However, if the DHO report is not available, the BOP

regulations allow an inmate to proceed through the appeal process without it.

28 C.F.R. § 541.19, BOP PS 5270.08, Ch. 8 at 1.  In such a case, the inmate

must specify the date on which the hearing occurred and the nature of the

charges involved.  28 C.F.R. § 541.19, BOP PS 5270.08, Ch. 8 at 1.  If, after

receiving a response from the Regional Office, the inmate remains unsatisfied

with the decision, he or she may continue to appeal to the Central Office.  28

C.F.R. § 542.15.

   Petitioner did not receive a copy of the DHO report until July 30, 2010.

(Buege Decl. ¶¶ 10, 16, Attach. E.)  He did not file any internal appeals at any

either before or upon receipt of that report.  (Buege Decl. 19, Attach. F.)  Instead,

Petitioner filed this Petition for Habeas Corpus on June 30, 2010, before he

received the DHO's report.  (Pet. for Habeas Corpus.)

**ANALYSIS**

With limited exceptions, a federal prisoner must exhaust any and all

available administrative remedies before challenging an action of the BOP in a

federal habeas action under 28 U.S.C. § 2241.  *See United States v. Chappel*,

208 F.3d 1069, 1069–70 (8th Cir. 2000) (dismissing inmate's challenge to a

denial of pretrial credit because inmate filed a federal claim before exhausting

administrative remedies within the BOP); *Willis v. Ciccone*, 506 F.2d 1011, 1015

(8th Cir. 1974) (requiring exhaustion of administrative remedies before review of

inmate's habeas corpus petition).  But courts may still choose to proceed to the

merits of a § 2241 petition even if an inmate has not exhausted administrative

remedies "because the exhaustion prerequisite . . . is judicially created, not

jurisdictional."  *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007).  Courts

determine whether to require exhaustion of administrative remedies by weighing

the inmate's interest in "prompt access to a federal forum" against court interests

in judicial economy and "administrative autonomy."  *McCarthy v. Madigan*, 503

U.S. 140, 146 (1992).

The BOP allows inmates to pursue formal review of grievances through a

three-tier administrative-remedy structure.  28 C.F.R. §§ 542.10–542.18.

Generally, an inmate must begin the administrative-remedy process by pursuing

informal resolution through prison staff.  28 C.F.R. § 542.13.  However, an

inmate may appeal a DHO decision by submitting an appeal directly to the

6

Regional Director without pursuing informal resolution.  28 C.F.R. §§ 541.19,

542.13, 542.14(d)(2).

An inmate must ordinarily submit this initial appeal to the Regional Director

within twenty days of the date on which the inmate received written notice of the

DHO's decision.  28 C.F.R. § 542.15.  BOP regulations require the DHO to

provide the inmate with "a written copy of the decisions and disposition" and that

the inmate must receive the report "ordinarily within 10 days of the DHO's

decision."  28 C.F.R. § 541.17(g).  The Government points out that this language

does not impose a mandatory deadline and that fluctuating amounts of DHO

hearings can create report backlogs that may delay delivery to inmates.  (Doc.

No. 5, Government's Resp. to Pet. for Writ of Habeas Corpus ("Gov'ts Resp.")

11 n.5, 14–15; Buege Decl. ¶ 16 n.2.)  If the DHO report is not available, the

BOP regulations allow an inmate to proceed through the internal appeal process

without it.  28 C.F.R. § 541.19, BOP PS 5270.08, Ch. 8 at 1.  In such a case, the

inmate must specify the date on which the hearing occurred and the nature of the

charges involved.  28 C.F.R. § 541.19, BOP PS 5270.08, Ch. 8 at 1.

If the inmate is dissatisfied with the Regional Director's response, he may

submit another appeal to the General Counsel at the Central Office.  28 C.F.R.

§ 542.15.  A response from the General Counsel completes the internal appeal

process.  28 C.F.R. § 542.15(a).  At that point, an inmate has exhausted all

administrative remedies.

Petitioner filed this habeas Petition on June 30, 2010 (Pet. for Habeas Corpus 7), and has filed no administrative appeals.  (Buege Decl. ¶ 19, Attach. F.)  Even though the DHO hearing took place on May 13, 2010, and the DHO did not provide Petitioner with a written copy of the report until July 30, 2010, because the deadline in 28 C.F.R. § 541.17(g) is not mandatory and because Petitioner could have pursued his appeal without a copy of the report under 28 C.F.R. § 541.19, the delivery delay does not affect Petitioner's obligation to exhaust administrative remedies.

Further, this Court notes that Petitioner's release date is projected for June 26, 2026.  Therefore, as the Government notes, Petitioner had enough time remaining in his sentence to pursue all administrative remedies before turning to habeas corpus relief.  (Gov'ts Resp. 15; *see also* Buege Decl. ¶ 3, Attach. A.) Furthermore, it is particularly important in this case for the appeals process to be exhausted.  The prison's policy of prohibiting the use of VoIP technology came out just three months before the incident that resulted in the charge against Petitioner.  Petitioner claims that he did not actually violate the new policy because the technology utilized by the service he used did not actually mask the numbers he was calling and, in any event, he had permission to call those numbers.  Given the fact that this is likely to be one of the only cases testing the prison's new policy prohibiting VoIP calls, it makes all the more sense for the

administrative appeals process to run its course before any federal court review of a § 2241 petition.

It is not clear at this time whether the BOP will hear an appeal of the unfavorable decision of the DHO in its Regional Office because Petitioner did not file an appeal within twenty days of receiving the report on July 30, 2010.  But Petitioner had already filed this habeas action by that time because the prison had not sent him the report in a timely fashion after the hearing.  Respondent has been circumspect about this, at one point observing that "he would have had ample time to exhaust his administrative remedies after receiving it because he is not due to be released until June 26, 2026," but not making it clear whether this meant that the BOP would reach the merits of an administrative appeal or not. This Court makes no determination at this time as to whether, under these circumstances, Petitioner has defaulted on his administrative remedies and is consequently barred from seeking habeas relief.  This Court does note, however, that at a minimum the BOP has discretion to allow filing extensions where an "inmate demonstrates a valid reason for delay."  28 C.F.R. § 542.14(b); BOP PS 1330.16 at 5 (outlining examples of "valid delay").  Because of the novelty of VoIP-related issues and in light of the recent BOP memorandum to all prison wardens recommending that discipline may not be appropriate in all cases of VoIP policy violations, the best course of action here is to give the Petitioner an opportunity to pursue his administrative remedies and give the BOP an

opportunity to rule on the merits of the appeal before federal court review.  (*See* Doc. No. 8, Reply to Resp't's Resp. to Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Reply") at 8 of 13 (discussing developments in VoIP technology and appropriate BOP responses).)[1]  Thus, this Court recommends dismissing Petitioner's Petition without prejudice.

## RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.     Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1), be

**DENIED**; and

2.     This action be **DISMISSED WITHOUT PREJUDICE**.


Date:  February 18, 2011

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by

---

[1]     On January 7, 2010, the BOP issued this memorandum to wardens, discussing developments in VoIP technology and suggesting appropriate responses to inmate violations – Petitioner included the memo in his Reply. (Reply 9 of 13.)  The memo says that "a careful review should be conducted to determine whether inmate discipline is appropriate." (*Id.*)  The memo suggests that "discipline may not be appropriate [where] there may be no indication the inmate knew a violation of Bureau policy was being committed." (*Id.*)

**March 4, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.